IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 1, 2002

## STATE OF TENNESSEE v. GENORE DANCY

**Appeal from the Criminal Court for Shelby County**
**Nos. 00-06306 and 00-06313-17     Joseph B. Dailey, Judge**

_____

### No. W2001-02451-CCA-R3-CD - Filed February 18, 2003

_____

After a Shelby County Criminal Court jury found the defendant, Genore Dancy, guilty of four counts of aggravated rape, seven counts of especially aggravated kidnapping, five counts of aggravated robbery, and one count of aggravated burglary, the trial court merged the aggravated rape verdicts into two aggravated rape convictions, imposed the remaining convictions, and sentenced the defendant to an effective incarcerative term of 150 years. In his appeal, the defendant claims that his especially aggravated kidnapping convictions violate principles of due process, that the evidence in one of the aggravated rape counts was insufficient to support that conviction, that the trial court erred in failing to instruct the jury as to the lesser-included offense of facilitation, and that, in sentencing the defendant, the trial court erred in not applying a mitigating factor and in misapplying various enhancement factors. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Pam Skelton and Harry Sayle (at trial), Memphis, Tennessee, and W. Mark Ward and Tony N. Brayton (on appeal), Memphis, Tennessee, for the Appellant, Genore Dancy.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Steve Jones, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The offenses in question were committed on the evening of July 21, 1999, at the Memphis residence of Albert Smith and his eight-year-old son, Kevin. Joshua Jones also resided at the Smith house at the time. Smith, also known as "Tojoe," was at home with Kevin. A friend of Albert Smith, Deana Taylor, was visiting in the home. Jones was outside the house working on his car radio.

A man approached Jones and asked if "Tojoe" lived in the house. Jones responded affirmatively and told the man that Smith was at home. Jones then left in his car to pick up two young women, Shauntel and Latoya Knox.

Inside the Smith residence, Kevin Smith told his father that someone was at the front door. When Albert Smith came into the front room, the man was inside. Not recognizing the man, Smith ushered the man back outside, but the man pulled a revolver and forced Smith to precede him inside. The man, who was joined by a younger man armed with an automatic pistol, demanded money, and the men took Smith's wallet, necklace, and watch. The older man forced the Smiths and Taylor to lie on the living room floor.

Both Mr. Smith and Ms. Taylor later viewed photographic lineups from which they identified the defendant as the older man who first came to the door. Also, they both identified the defendant at trial as being the same person.

Shortly after the defendant forced Mr. Smith back into the house, the second, younger man took Ms. Taylor's watch, bracelet, cellular telephone, and rings, while the defendant continued to demand money from Mr. Smith and began to search the room.

Later, Mr. Jones arrived at the residence with the Knox women. The intruders ordered Mr. Smith to go to the door. Smith told Jones to tell the women to leave. Mr. Smith then tried to run from the house, and the Knox women fled to their car; however, the younger of the intruders caught them and, at gunpoint, ordered them all into the house. Mr. Jones was already inside, where someone struck him in the head. The pistol wielding defendant then robbed Mr. Jones of his jewelry.

At this point, the defendant and his companion held the two Smiths, Taylor, Jones, and the Knox women in the living room. The defendant instructed them to remove their clothes and lie in the floor. The victims complied. The younger man took Shauntel Knox into a back room, where he ordered her to perform fellatio upon him while he held the pistol. Back in the living room, the defendant ordered Latoya Knox to unplug the VCR. Latoya Knox testified that the defendant then ordered her to perform fellatio upon him while he held the gun to her head. At some point, a pager belonging to one of the victim's sounded, and the defendant fired his pistol at the pager. Hearing the gunshot, the younger intruder returned to the living room with Shauntel Knox.

The two intruders moved the victims to the kitchen, ordered them to lie in a pile on the floor, and covered the victims with a sheet. Then, the defendant took Taylor to another room, attempted unsuccessfully to penetrate her anally and then vaginally from the rear with his penis, and then ultimately penetrated her vagina from the front. Taylor was returned to the sheet-enshrouded victims in the kitchen. A pillowcase was placed over Taylor's head.

At some point, a friend of Jones's, Marcus Stewart, arrived at the Smith house. The intruders forced Mr. Stewart inside and pulled his shirt over his head. Mr. Stewart testified that

"they" took his wallet and truck keys. They then took Mr. Stewart into the kitchen and placed him in the floor with the others. The intruders taped the victims' legs and arms with duct tape. At some point during his captivity in the kitchen, Kevin Smith became so frightened that he urinated on himself.

Later, other intruders arrived. The victims, who could not see above floor level, heard various voices and saw four or five different pairs of shoes worn by persons who went about ransacking the house and demanding money from Albert Smith.

Taylor was taken from the kitchen and, with the pillowcase still over her head, was raped orally and vaginally by at least three different men, whom she could not identify. At one point, she was raped simultaneously by two men. Afterward, she was re-taped and returned to the kitchen.

Ultimately, the men left the house, and the victims freed themselves. The women, who were hysterical, fled the house. Taylor went home and reported the events to her mother, who called the police. Taylor was examined and treated at a rape crisis center. The treating nurse found scrapes and abrasions in and about Taylor's vagina. The nurse procured a slide of vaginal fluid which, when analyzed by a Tennessee Bureau of Investigation forensics expert, proved to contain semen. Upon DNA analyses of the fluid and a blood sample taken from the defendant, the TBI expert opined that the semen was contributed by the defendant.

The defendant did not testify and offered no witnesses in his behalf. The jury found him guilty of two counts of aggravated rape of Shauntel Knox and two counts of aggravated rape of Deana Taylor; seven counts of especially aggravated kidnapping, one count each relating to Albert Smith, Kevin Smith, Joshua Jones, Shauntel Knox, Latoya Knox, Deana Taylor, and Marcus Stewart; five counts of aggravated robbery, one count each involving Albert Smith, Jones, Taylor, Latoya Knox and Stewart; and one count of aggravated burglary. The trial court merged the multi-count convictions of the aggravated rapes of each victim into one conviction for each victim, respectively, and sentenced the defendant as a Range II, multiple offender to 40 years for each aggravated rape and especially aggravated kidnapping conviction, 20 years for each aggravated robbery, and 10 years for aggravated burglary. Though a combination of consecutive and concurrent sentencing, the trial court arranged an effective sentence of 150 years.

I. Sufficiency of the Evidence.

The defendant's challenge to the sufficiency of the convicting evidence is limited to one of the aggravated rape convictions – the conviction in which Shauntel Knox was the victim.

When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a

combination of direct and circumstantial evidence. *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

In determining the sufficiency of the evidence, this court does not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State,* 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. *Id.* at 835. In *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973), our supreme court said, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the state."

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. *Id.* at 914.

The conviction being challenged for insufficiency of the evidence is the aggravated rape of Shauntel Knox, accomplished through the fellatio of the defendant's accomplice. "Aggravated rape is unlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by . . . force or coercion [being] used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon." Tenn. Code Ann. § 39-13-502(a) (1997). Also,

> [a] person is criminally responsible for an offense committed by the conduct of another if:
>
> . . .
>
> (2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense . . . .

*Id.* § 39-11-402(a)(2) (1997).

In the light most favorable to the state, the evidence in the present case showed that the defendant and his accomplice entered the Smith residence and held Smith, his young son, Ms. Taylor, and the Knox women at gunpoint. While the accomplice took Shauntel Knox to another room and raped her, the defendant held the other victims captive and forced Latoya Knox to fellate him. We conclude that the jury could have reasonably inferred from this evidence that the defendant intended to assist his accomplice in raping Shauntel Knox by keeping the other victims subdued. As such, the evidence was sufficient.

## II. *Anthony* Due Process Violation.

In *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991), our supreme court addressed the issue of "the propriety of a kidnapping conviction where detention of the victim is merely incidental to the commission of another felony, such as robbery or rape." *Id.* at 300. The court reasoned that a double jeopardy analysis was inadequate for resolving this issue and turned instead to due process principles. *See id.* at 306. The court ruled that the constitutional validity of a separate kidnapping conviction in such cases is determined by "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is therefore, sufficient to support such a conviction." *Id.* It also commented that "one method of resolving this question is to ask whether the defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the [associated] crime . . . itself.'" *Id.* (quoting *State v. Rollins*, 606 S.W.2d 828, 830 (Tenn. Crim. App. 1980)). In making its determination, the *Anthony* court observed that

> every robbery, by definition, involves some detention against the will of the victim, if only long enough to take goods or money from the person of the victim. This does not mean that the legislature intended that every robbery should also constitute a kidnapping, even though a literal reading of the statute might suggest otherwise.

*Id.*

In *State v. Dixon*, 957 S.W.2d 532 (Tenn. 1997), our supreme court clarified the *Anthony* ruling by stating,

> The *Anthony* decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery. Accordingly, any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping.

*Id.* at 534-35. The court then refined the *Anthony* analysis by establishing a two-part test for determining whether a separate kidnapping conviction violates due process. The first inquiry is "whether the movement or confinement was beyond that necessary to consummate [the associated felony]." *Id.* at 535. If that question is answered affirmatively, "the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *Id.* If both prongs are satisfied, then the dual convictions do not violate due process. *See id.*

As charged in the indictments in the present case, especially aggravated kidnapping is false imprisonment "accomplished with a deadly weapon." Tenn. Code Ann. § 39-13-305(a)(1) (1997). "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." *Id.* § 39-13-302(a) (1997).

Applying *Dixon*, we look at the facts in the present case to first determine whether the kidnapping victims were moved or confined more extensively than was necessary to consummate the crimes of robbery and rape. Clearly, the victims were moved from Smith's living room to the kitchen. This movement has no apparent connection to the defendant's commission of any of the offenses of which he was convicted. The robbery victims surrendered their money and personalty to the defendant and his younger accomplice before the victims were respectively removed to the kitchen. Also, the sexual assault committed against Shauntel Knox occurred while the remaining victims were held in the living room. As the sexual assaults of the Knox women showed, it was unnecessary to move the victims into the kitchen as a means of consummating the rapes of Ms. Taylor. Also, there is no indication that the intruders committed further crimes following the second rape of Ms. Taylor. Thus, the movement of the victims into the kitchen was neither necessary nor incidental to the consummation of the aggravated robberies and aggravated rapes.

Furthermore, the victims' confinement in the kitchen was unnecessary to the consummation of the associated crimes. As noted above, the robberies occurred before the victims were moved and confined. Also, it was not necessary to confine the other victims as a means of assaulting Ms. Taylor, especially when as many as five intruders were in the house. After both of her rape ordeals, Ms. Taylor was returned to the kitchen, where all of the victims were held until the intruders left the house. Furthermore, the extent of the confinement seems superfluous to the commission of any of the offenses. The victims, sans clothing, were bound hand and foot and left in a heap, under a sheet, on the kitchen floor.

Thus, we readily determine that the first prong of the *Dixon* test is met. We now consider whether the movement or confinement prevented the victims from summoning help, lessened the intruders' risk of detection, *or* significantly imperiled the victims or increased their risk of harm. We conclude that the movement of the victims away from the living room where the front door of the house was located at least hampered the victims in escaping or summoning help; more patently, the movement decreased the intruders' risk of detection. More patently still, the actions of

binding the victims hand and foot with duct tape, piling them onto one another in the floor, and covering them with a sheet rendered the victims utterly defenseless to any assaults that the intruders might have inflicted upon them. Accordingly, we find that this confinement increased the risk of harm to the victims.

The result of our analysis is that the kidnapping convictions did not violate principles of due process in this case.

### III. Failure to Instruct on Facilitation (Plain Error Analysis).

In his next issue, the defendant claims that the trial court erroneously failed to instruct the jury on facilitation as a lesser-included offense of the charged offenses.

Criminal responsibility for facilitation of a felony is committed by a person who, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under [Code section] 39-11-402(2) . . . knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403 (1997). *Cf. id.* §§ 39-11-403(a)(2) (1997) (criminal responsibility for an offense committed by another).

In Tennessee at the time of the offenses and the trial in the present case, it was the statutory duty of all judges in felony cases "to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so." Tenn. Code Ann. § 40-18-110(a) (1997) (amended 2001 Public Acts, ch. 338 (effective January 1, 2002)). The supreme court has determined that facilitation is a lesser-included offense when a defendant is charged with criminal responsibility for the conduct of another. *State v. Fowler*, 23 S.W.3d 285, 288 (Tenn. 2000); *State v. Burns*, 6 S.W.3d 453, 470 (Tenn. 1999).

The status of facilitation as a lesser-included offense does not, however, end the inquiry whether the trial court should instruct the jury accordingly. Determining whether a lesser-included offense must be charged is a two-part inquiry. *Burns*, 6 S.W.3d at 469. First, the court must determine whether any evidence exists that reasonable minds could accept as to the application of a lesser-included offense. *Id.* In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. *Id.* Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense. *Id.* at 467-69; *see State v. Allen,* 69 S.W.3d 181 (Tenn. 2002) (to determine whether the lesser-included offense of facilitation should be charged, court should utilize two-part justification analysis of *Burns*).

When a reviewing court determines that a trial court erroneously omitted an instruction on a lesser-included offense, "harmless error inquiry is the same as for other constitutional errors: whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial." *Allen*, 69 S.W.3d at 191.

Although the defendant in the present case need not have requested an instruction on a lesser-included offense as condition of raising the issue on appeal, *see* Tenn. Code Ann. § 40-18-110(a) (1997) (amended 2001 Pub. Acts, ch. 338), he generally must raise the failure to instruct on the lesser-included offense in his motion for new trial if he desires appellate review of the issue. Tenn. R. App. P. 3(e); *State v. Treva Diane Green*, No. E1999-02204-CCA-R3-CD, slip op. at 13 (Tenn. Crim. App., Knoxville, Dec. 14, 2000), *perm. app. denied* (Tenn. 2001); *State v. Spadafina*, 952 S.W.2d 444, 451 (Tenn. Crim. App. 1996). In the present case, the defendant failed to raise the lesser-included-offense issue in his motion for new trial; accordingly, he is relegated to seeking appellate relief via the plain error rule. *See* Tenn. R. App. P. 13(b); Tenn. R. Crim. P. 52(b). In *State v. Adkisson*, 899 S.W.2d 626 (Tenn. Crim. App. 1994), this court set forth the following factors for a court to consider when determining whether "plain error" exists:

> (a) the record must clearly establish what occurred in the trial court;
>
> (b) a clear and unequivocal rule of law must have been breached;
>
> (c) a substantial right of the accused must have been adversely affected;
>
> (d) the accused did not waive the issue for tactical reasons; and
>
> (e) consideration of the error is "necessary to do substantial justice."

*Id.* at 641-42.

### a. The Rape Charges.

In the present case, plain error analysis entails a review of the structure of the charges, verdicts, and resulting judgments, and we begin this review with the two aggravated rape convictions. In the first indictment, the defendant was charged in two counts with the aggravated rape of Shauntel Knox. In the first such count, he was charged with committing the aggravated rape via the use of a weapon, *see* Tenn. Code Ann. § 39-13-502(a)(1) (1997); in the second count, he was charged with committing the aggravated rape via the aid of "one (1) or more other persons," *id.* § 39-13-502(a)(3)(A) (1997). Apparently, these two counts alternatively alleged the commission of one offense – Ms. Knox's coerced fellatio of the defendant's accomplice. The defendant was found guilty on both counts, and the trial court merged the verdicts into one conviction of the aggravated rape of Shauntel Knox. The next indictment alleged in two counts the defendant's aggravated rape of Deana Taylor, one via use of a weapon and the second via the aid of another person. However, with respect to the Taylor offenses, the state evidently intended to charge the defendant with two instances of rape. Apparently, the trial court instructed the jury that the state had elected two instances of rape of Ms. Taylor, that the first count related to the defendant's taking the victim aside and, at gunpoint, raping her vaginally after unsuccessfully attempting to penetrate her anally, and that the second count related to the rape of the victim after she was removed from the kitchen with the pillowcase over her head. The jury convicted the defendant of both counts in which Ms. Taylor was

the victim. Although these counts were not alternatives to one another, the trial court nevertheless merged the verdicts into a single conviction of the aggravated rape of Ms. Taylor.

In connection with the rape counts, the trial court instructed the jury about criminal responsibility through the act of another, but the court did not instruct the jury as to the lesser-included offense of facilitation.

(1) *Victim Knox.*

Obviously, the defendant's aggravated rape of Shauntel Knox is based upon the acts perpetrated by his accomplice. Thus, the theory of guilt emanates from the notion of complicity set forth in Code section 39-11-402, and therefore facilitation is a lesser-included offense of the aggravated rape. We believe that the evidence was sufficient to sustain a conviction of facilitation and that reasonable minds could accept that the defendant merely facilitated the rape by, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under [section] 39-11-402(2), . . . knowingly furnish[ing] substantial assistance in the commission of the offense." *See* Tenn. Code Ann. § 39-11-403(a) (1997).

That said, we are satisfied that the omission of the facilitation charge was harmless beyond a reasonable doubt. In *Allen*, our supreme court reversed Allen's conviction when the trial court failed to instruct the jury on facilitation and when "the issue of Allen's intent was contested." *Allen*, 69 S.W.3d at 191. The *Allen* court noted that "evidence that Allen shared the intent of his accomplice was controverted and not overwhelming." *Id.* In the present case, the defendant did not testify and did not controvert whether, in holding the other victims captive during the rape of Shauntel Knox, he intended to promote or assist the commission of the offense, *see* Tenn. Code Ann. § 39-11-402 (1997), or merely furnished substantial assistance to the offender, knowing that the offender intended to commit the rape, *see id.* § 39-11-403(a) (1997). The evidence showed not only that the defendant held the other victims at bay while his accomplice assaulted Shauntel Knox, but also demonstrated that the defendant similarly assaulted Latoya Knox during the same interlude and that he later raped Deana Taylor while his accomplice was in charge of the other victims. Further, both the defendant and his accomplice were armed and showed a common intent to rob the victims. Thus, the facts give rise to a strong inference that the defendant intended to promote or assist the commission of the rape of Shauntel Knox, and no contradictory evidence was introduced. All in all, we conclude that, were we reviewing the merits of the issue of the absent facilitation charge in the Shauntel Knox case, we would find harmless error. In that circumstance, no substantial right of the defendant has been adversely affected, *see Adkisson*, 899 S.W.2d 641-43, with the result that we decline to find plain error in this claim.

(2) *Victim Taylor.*

Next, we look at the defendant's conviction of the aggravated rape of Deana Taylor. In the first incident, only the defendant penetrated the victim. We see no issue of criminal responsibility and hence no issue of facilitation in the defendant's commission of the first rape.

Only the second rape of Ms. Taylor involved the active participation of other offenders, thereby spawning a criminal responsibility or complicity theory of culpability. Because this incident involved penetrating the victim by more than one offender, facilitation was a lesser-included offense, and because the defendant's actual role in the rape was not revealed, the evidence warranted the instruction on facilitation. At any rate, the verdict resulting from this second rape of Ms. Taylor has been merged into the verdict resulting from the first rape, in which there is no issue of complicity. In this circumstance, once again, there is no substantial interest of the defendant adversely affected by the omission of the facilitation charge. Hence, we decline to notice plain error.

### b. The Other Charges.

The claim to plain error in the other convictions is even more attenuated. In his brief, the defendant claims that the trial court charged the jury on criminal responsibility for the act of another with respect to each and every count in the indictments; however, the record is not clear that such is the case. In the record, the trial court's jury charge appears as a compilation of printed charge segments that was bound by the trial court clerk in a separate volume that in appearance is similar to the volume of the technical record. The page numbers were apparently affixed by the clerk when the compilation was bound. The charge segment on criminal responsibility is inserted following the segment that defines the elements of aggravated rape and rape and does not appear again throughout the charge.

Frankly, we cannot discern whether the criminal responsibility segment relates to all of the cases, only the rape cases, or only one rape case. Because the format for preserving the charge in the record is not a verbatim transcript of the charge as read to the jury, the trial judge may have explained to the jury how it should utilize the criminal responsibility instruction, but if so, that explanation is not in the record before us. Furthermore, the record does not contain counsel's opening statements and closing arguments, and we have no clue whether either party espoused complicity theories in any of the counts beyond the rape counts. We know from the evidence presented at trial that the defendant played an active role in the robberies of Smith, Jones, Stewart and the Knox women and in the transportation of all the victims to the kitchen, but in the final analysis, the record fails to clearly establish what transpired in the trial court. *See Adkisson*, 899 S.W.2d at 641-42. For that reason, the claim that the trial court erred in failing to instruct on facilitation in the non-rape cases should not be noticed as plain error.[1]

### IV. Sentencing Issues.

The defendant challenges the length of his sentences by asserting on appeal that the trial court failed to apply a mandatory mitigating factor and misapplied certain enhancement factors.

---

[1]We have previously questioned the Shelby County Criminal Court's practice of including the jury charge in the appellate record as an authenticated "copy," rather than in the form of a verbatim transcript prepared by the court reporter. *See, e.g., State v. Walter Wilson*, No. W2001-01463-CCA-R3-CD (Tenn. Crim. App., Jackson, Sept. 4, 2002).

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991). "The burden of showing that the sentence is improper is upon the appellant." *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id.* If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210(a), (b) (1997); *id.* § 40-35-103(5) (1997); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

In the present case, the presentence report shows that the defendant earned a high school diploma in 1977. In Tennessee, he was convicted in 1999 of evading arrest, criminal trespass, driving while under the influence, driving on a suspended license, possession of drug paraphernalia, and resisting arrest and was convicted in 2000 of forgery. Also, the defendant was convicted of aggravated rape and aggravated assault in Texas in 1982. As a result of his prior conviction record, the defendant undisputedly qualified as a Range II offender.

The state asked the trial court to apply the following enhancement factors:

(2), that the defendant has a previous history of criminal convictions or behavior in addition to those necessary to establish the sentencing range;

(3), that the defendant was a leader in the commission of the offenses;

(4), that the offenses involved more than one victim;

(5), that a victim, Kevin Smith, was particularly vulnerable because of age;

-11-

(8), that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;

(9), that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community;

(10), that the defendant possessed or employed a firearm during the commission of the offenses;

(11), that the defendant had no hesitation about committing the crimes when the risk to human life was high;

(12), that the felonies involved the threat of death or bodily injury to another person and the defendant has previously been convicted of a felony that resulted in bodily injury;

(14), that the felony was committed while on bail or parole from a prior felony; and

(17), that the crimes were committed under circumstances in which the potential for bodily injury to a victim was great.

*See* Tenn. Code Ann. § 40-35-114(2), (3), (4), (5), (8), (10), (11), (12), (14), (17) (Supp. 2002). The trial court applied factors (2), (3), (4), (9), (11), and (12). *See id.* The court applied no mitigating factors. *See id.* § 40-35-113 (1997).

### a. Failure to Consider a Mitigating Factor in Imposing the Kidnapping Sentences.

The trial court applied no mitigating factors when it imposed a 40-year sentence in each of the especially aggravated kidnapping convictions. The defendant posits that the court erred in not following the mandate of Code section 39-13-305(a)(2) that "[i]f the offender voluntarily releases the victim alive or voluntarily provides information to the victim's safe release, such actions shall be considered by the court as a mitigating factor at the time of sentencing." Tenn. Code Ann. § 39-13-305(b)(2) (1997). Focusing upon the section's reference to the *safe* release of the victim, the state argues that the statute is inapplicable because three of the victims were raped and all of them were terrorized by being bound beneath a sheet by their gun-wielding captors.

We are reluctant to adopt the state's reasoning that the victims did not safely emerge from their captivity in light of the assaults that occurred during that time. We believe that Code section 39-13-305(b)(2)'s objective is to influence kidnappers not to kill their victims. *See* Tenn. Code Ann. § 39-13-305 Sentencing Comm'n Comments (Subsection (b) "requires the court to

consider the voluntary *safe* release of the victim[s] as a mitigating factor. This provision reflects the concern for the safety of the victim[s].") (emphasis added). *But see State v. Winford Lee Pipkin*, No. 01C01-9605-CR-00210 (Tenn. Crim. App., Nashville, Dec. 4, 1997). In the present case, the defendant, despite making threats, made no attempt to kill the victims.

That said, we are not convinced that Code section 39-13-305(b)(2) applies in the present case. Whether the victims were *released* is equivocal. On the one hand, when the defendant and his accomplices departed the scene, they removed the immediate threat to the victims' lives. On the other hand, the defendant and his accomplices did not liberate the victims but left them bound with strong tape. Although the victims ultimately escaped, they were helpless and in a vulnerable position until they freed themselves. *See State v. Taylor*, 63 S.W.3d 400, 411-12 (Tenn. Crim. App. 2001) (rejecting defendant's claim that he voluntarily released victim; evidence showed release was due only to successful escape). Moreover, the wording employed by the legislature in section 39-13-305(b)(2) suggests a distinction between (1) an actual release of the victims and (2) the kidnapper's leaving restrained victims behind. *See id.* (kidnapper may claim the statutory mitigation if he voluntarily releases the victim alive "or voluntarily provides information leading to the victim's safe release"). All in all, we conclude that, under the facts of the present case, section 39-13-305(b)(2) does not apply.

b. Misapplication of Enhancement Factors.

The defendant next argues that the trial court erred in applying certain statutory enhancement factors in establishing the length of his sentences. Specifically, he claims that the lower court erred in applying factor (3), that the defendant was a leader in the commission of the offenses; factor (4), that the offenses involved more than one victim; factor (5), that Kevin Smith was particularly vulnerable by reason of his age; and factor (11), that the defendant had no hesitation about committing the crimes when the risk to human life was high. *See* Tenn. Code Ann. §40-35-114 (Supp. 2002).

*Factor (3).*

The defendant argues that the trial court's determination that he was a leader in the commission of the offenses should be reversed because the trial court failed to register findings that support the use of this factor. To the contrary, the record reflects that the trial judge stated that the evidence overwhelmingly showed that the defendant was a leader in the commission of the offenses. We agree. First, "[o]ur cases have established that enhancement for being a leader in the commission of an offense does not require that the defendant be the sole leader but only that he be 'a' leader." *State v. Hicks*, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993). Second, the defendant was the first to enter the Smith residence; he raped Ms. Taylor; and he played active roles in the robberies and kidnappings. In so doing, he established himself as a leader in the commission of the offenses. Factor (3) properly applies.

*Factor (4).*

-13-

The defendant next claims that the trial court erred in finding that the offenses involved more than one victim. *See* Tenn. Code Ann. § 40-35-114(4) (Supp. 2002) (sentence may be enhanced when the "offense involved more than one (1) victim"). We agree; our supreme court has held "there cannot be multiple victims for any one offense . . . committed against a specific, named victim." *State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002). The state, however, asserts that factor (4) should apply in the aggravated robbery cases because the robbery against Shauntel Knox was uncharged, rendering her a supernumerary victim. However, in *Imfeld*, the high court held that "application of [factor (4)] on the basis that there were individuals . . . on behalf of whom no charges were filed is simply inconsistent with the statutory language of Tenn. Code Ann. § 40-35-114[4]." *Id.* In the present case, the charges of aggravated robbery named specific, individual victims, and based on *Imfeld*, the presence of Shauntel Knox as an unnamed robbery "victim" is not a basis for applying factor (4).

In the wake of *Imfeld*, we conclude that the trial court erred in applying factor (4) to enhance any of the defendant's offenses. We note, however, that the trial judge devalued the use of this factor; he determined that its application was limited to the robbery offenses, in none of which was Shauntel Knox a named victim. Nevertheless, he enhanced all sentences to the maximum. Thus, we conclude that factor (4) negligibly influenced the lower court's sentencing determination.

*Factor (5).*

The defendant challenges the trial court's sentence enhancement based upon eight-year-old victim Keven Smith's particular vulnerability. *See* Tenn. Code Ann. § 40-35-114(5) (Supp. 2002). The state counters that Kevin Smith's particular vulnerability is demonstrated by his urinating on himself while being restrained in the kitchen.

"Whether a victim is 'particularly vulnerable' for purposes of Tenn. Code Ann. § 40-35-114[5] is 'a factual issue to be resolved by the trier of fact on a case by case basis.'" *State v. Lewis*, 44 S.W.3d 501, 505 (Tenn. 2001) (quoting *State v. Poole*, 945 S.W.2d 93, 96 (Tenn.1997)). "Use of the 'particularly vulnerable' enhancement factor is appropriate . . . if the facts show that the vulnerabilities of the victim[] . . . had some bearing on, or some logical connection to, 'an inability to resist the crime, summon help, or testify at a later date.'" *Id.* Evidence of the victim's particular vulnerability need not be extensive. *Id.* at 505. On the other hand, a "vulnerability that is wholly irrelevant to the crime is not 'appropriate for the offense' as required by Tenn. Code Ann. § 40-35-114." *Lewis*, 44 S.W.2d at 505.

We conclude that Kevin Smith's vulnerability due to his age was irrelevant to his being kidnapped; the adults were kidnapped as effectively as was Kevin Smith. The defendant and at least one of his accomplices brandished firearms, and none of the kidnapping victims was able to resist the imperative of armed force. *See id.* Thus, the trial court erred in applying factor (5) to the especially aggravated kidnapping of Kevin Smith, despite his being frightened to the point of urinating on himself.

Again, however, we note that the trial court apparently placed little emphasis upon this factor; it imposed maximum sentences in all convictions, not just the one involving Kevin Smith.

*Factor (11).*

Next, the defendant challenges the enhancement of his sentences based upon a lack of hesitation about committing the offenses when the risk to human life was high. *See* Tenn. Code Ann. § 40-35-114(11) (Supp. 2002). He posits that the state failed to show that the defendant's culpability in committing the offenses was appreciably greater than that incident to the conviction offenses. *See State v. Jones*, 883 S.W.2d 597, 603 (Tenn. 1994). The state advances the trial court's reliance upon the defendant's *discharge* of his pistol when the pager sounded, a circumstance that the trial court found raised the level of risk above the mere possession of a firearm.

Our sentencing law provides that enhancement factors may not be applied when they constitute elements of the offense as charged in the indictment. *See* Tenn. Code Ann. § 40-35-114 (Supp. 2002). Also, "[e]nhancement factors are not intended to allow sentence adjustments based on the general nature of the offense." *State v. Kissinger*, 922 S.W.2d 482, 488 (Tenn. 1996). "A court must . . . look to the specific facts and circumstances surrounding a defendant's crime to determine whether a particular enhancement factor is applicable." *Lewis*, 44 S.W.3d at 506.

As we have already noted, the mode of especially aggravated kidnapping charged in the indictments in the present case is that the defendant "accomplished [the kidnapping] with a deadly weapon." *See* Tenn. Code Ann. § 39-13-305(a)(1) (1997). The mode of aggravated robbery charged in the indictments is that the defendant "accomplished [the robbery] with a deadly weapon." *See id.* § 39-13-402(a)(1) (1997). The mode of aggravated rape charged in the indictments is that the defendant used force or coercion to "accomplish the act and the defendant [was] armed with a weapon." *See id.* § 39-13-502(a)(1) (1997). The difference in the wording of the especially aggravated kidnapping and aggravated robbery statutes as compared with the aggravated rape statute results in different treatments of factor (11) in the respective cases.

"This Court has previously held that factor [11] is not an element of the offense of aggravated rape committed while in possession of a weapon and it may be applied when the use of the weapon involves a greater risk of harm than that required by the standards of the aggravated rape statute." *State v. Spratt*, 31 S.W.3d 587, 608 (Tenn. Crim. App. 2000); *see also Manning v. State*, 883 S.W.2d 635, 640 (Tenn. Crim. App. 1994). In the rapes of Shauntel Knox and Deana Taylor, the perpetrators were not only armed but held pistols to the heads of the victims or otherwise brandished the pistols in threatening manners. Thus, we conclude that factor (11) applies in the aggravated rape convictions.

On the other hand, aggravated robbery requires the use of a deadly weapon to accomplish the act. As such, enhancement factor (11) "is inapplicable in that it has already been employed as an element of this offense." *Manning*, 883 S.W.2d at 640; *see State v. Claybrooks*, 910

-15-

S.W.2d 868, 872-73 (Tenn. Crim. App. 1994); *see also State v. Nix,* 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995) (use of a deadly necessarily entails high risk to human life and great potential for bodily injury). Likewise, because especially aggravated kidnapping requires the use of a deadly weapon to accomplish the offense, enhancement factor (11) is inapplicable. *State v. Kern,* 909 S.W.2d 5, 7-8 (Tenn. Crim. App. 1993). The factor may be applicable, however, in aggravated robbery or especially aggravated kidnapping cases when the deadly weapon is used in a manner that risks "harm to a person other than the victim." *State v. Zonge*, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997) (finding the factor applicable, based upon the facts of an especially aggravated kidnapping case in which the defendant pointed the gun at a person who was not a victim of the charged crime).

Thus, in the present case, factor (11) was inapplicable to enhance the defendant's sentences in the especially aggravated kidnapping convictions. The factor is applicable, however, in the five aggravated robberies. During the robberies as charged in the indictments, Kevin Smith and Shauntel Knox, who were not victims in the charged robberies, were at risk from the defendant's use of a deadly weapon.[2] Of course, factor (11) is available to enhance the sentence in the aggravated burglary case.**[3]**

In summary, no mitigating factors apply. Enhancement factors (2) and (3) apply and are assigned substantial weight. Factor (2), previous criminal convictions or behavior, is especially weighty in light of the defendant's prior felony record involving crimes similar to the present crimes. Factor (3), that the defendant was a leader in the offenses, merits moderate weight. Factor (9), that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community, applies and is assigned significant weight. Factor (12), that the crimes involved the threat of death or bodily injury to another person and the defendant has previously been convicted of a felony that resulted in death or bodily injury, applies, but the factor is somewhat duplicitous of factor (2) and is not accorded great weight. Although enhancement factors (4) and (5) do not apply and although factor (11) applies only in the rape, robbery, and burglary convictions, the absence of these factors does not appreciably diminish the aggregate effective weight of factors (2), (3), and (9). The result is that the record supports the imposition of maximum sentences in all convictions.

---

[2]The state argues, and the trial court found, that factor (11) applies in the various cases because the defendant fired his pistol in a room full of people, excluding Shauntel Knox and Mr. Stewart. We do not rely merely or specifically upon the defendant's discharge of the gun, however, to support the application of factor (11) in the robberies; the discharge of the gun was but one facet of the defendant's *use* of the gun to accomplish the robberies.

[3]In his brief, the defendant complains that the trial court erroneously applied enhancement factors (17) and (23). *See* Tenn. Code Ann. § 40-35-117 (17) (crime committed under circumstances under which the potential for bodily injury to a victim was great), (23) (offender acts in respect of the race, religion, color, disability, sexual orientation, national origin, ancestry or gender of the injured person). We do not believe the trial judge applied these factors. He opined on the record that factors (17) and (23) duplicated other applied factors. Clearly, the trial court assigned no weight to these factors, and neither do we.

V.  Conclusion.

We conclude that the record evinces no reversible error.  Consequently, the convictions and sentences are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE